Empery Asset Master, Ltd. v AIT Therapeutics, Inc. (2023 NY Slip Op 01585)

Empery Asset Master, Ltd. v AIT Therapeutics, Inc.

2023 NY Slip Op 01585

Decided on March 23, 2023

Appellate Division, First Department

Pitt-Burke, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 23, 2023
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern
Jeffrey K. Oing Tanya R. Kennedy Manuel Mendez Bahaati E. Pitt-Burke

Index No. 651306/18 Appeal No. 17414 Case No. 2021-04618 

[*1]Empery Asset Master, Ltd., et al., Plaintiffs-Respondents,
v
AIT Therapeutics, Inc., Defendant-Appellant.

Defendant appeals from a judgment of the Supreme Court, New York County (Joel M. Cohen, J.), entered December 1, 2021, after a nonjury trial, in favor of plaintiffs in the amount of $6,725,965.32, plus statutory interest.

Kasowitz Benson Torres LLP, New York (Marc E. Kasowitz, Albert S. Mishaan, Kim Conroy and Sondra D. Grigsby of counsel), for appellant.
Olshan Frome Wolosky LLP, New York (Thomas J. Fleming and Kerrin T. Klein of counsel), for respondents.

Pitt-Burke, J. 

The main issues raised in this appeal are whether plaintiffs proved by clear and convincing evidence that their warrants to purchase additional shares of defendant's common stock should be reformed to reflect the parties' intent that the warrants provide full antidilution protection; whether Supreme Court properly adjusted the exercise price of plaintiffs' warrants; and whether Supreme Court properly calculated plaintiffs' damages.
Defendant AIT Therapeutics, Inc. is a medical device and biopharmaceutical company that develops equipment that seeks to use inhaled nitric oxide to treat respiratory infections and gaseous nitric acid to treat solid tumors. Plaintiffs Empery Asset Master Ltd., Empery Tax Efficient, LP and Empery Tax Efficient II, LP, are investment funds that routinely invest in microcap and start-up companies.
In 2016, defendant sought to raise capital to complete a reverse merger with a public company in the United States (2016 Capital Raise). On or about December 29, 2016, plaintiffs entered into a securities purchase agreement (SPA) with defendant, in which plaintiffs were issued shares of defendant's common stock and warrants to purchase additional shares in accordance with the terms and provisions of the agreement. The transaction closed in January 2017, at which time plaintiffs received 83,334 shares of defendant's common stock and 83,334 warrants to purchase additional shares at an exercise price of $6.90 per share.
The warrants, which are the principal concern of this appeal, gave plaintiffs the right to purchase additional shares of defendant's common stock at any time from the date the warrants were issued until January 13, 2022. Importantly, sections 3(a) through 3(h) of each warrant contained antidilution provisions, which were intended to protect plaintiffs' investment in the event defendant issued common stock to other parties for consideration below the exercise price of plaintiffs' warrants.
As relevant here, section 3(h) provided that the number of plaintiffs' warrant shares would double in the event defendant failed to raise the additional capital contemplated in the 2016 Capital Raise—an event that occurred in February 2017, whereby plaintiffs' warrants were adjusted, increasing the total number of warrant shares to 166,668.
Subsequently, in late 2017, defendant initiated another capital raise. On February 16, 2018, defendant closed the capital raise and entered into a securities purchase agreement with new investors (February 2018 SPA). Pursuant to the February 2018 SPA, the new investors were issued warrants to purchase common stock at an exercise price of $4.25 per share, a price which was below the exercise price of plaintiffs' warrants.
Based on the February 2018 SPA, plaintiffs informed defendant that the exercise price of their warrants should be reduced and that the number of shares issuable upon the exercise of their warrants should be increased. On March 1, 2018, defendant issued [*2]a certificate of adjustment (COA) pursuant to section 3(f) of plaintiffs' warrants. While the COA reduced the exercise price of plaintiffs' outstanding warrants to $4.25 per share, it did not increase the number of shares subject to plaintiffs' option to exercise their warrants. Instead, defendant took the position that the third sentence in section 3(b) of the warrants referred only to the "immediately preceding sentence," and therefore the shares issuable upon the exercise of plaintiffs' warrants would be increased only if defendant issued shares for no consideration.
In March 2020, plaintiffs exercised their warrants and delivered payment for 565,822 shares at an exercise price of $1.57 per share—a valuation based on plaintiffs' allegation that defendant structured the February 2018 SPA in two tranches to disguise that defendant's common stock was being sold to new investors at a reduced price. Defendant, however, did not issue the requested shares at the claimed exercise price, and instead issued 166,668 shares, the number of warrant shares to be issued without the antidilution adjustment.
Plaintiffs' action asserts that defendant's COA constituted a breach of contract because it contained an incorrect exercise price, which plaintiffs contend should have been $1.57, and failed to increase the aggregate number of their warrant shares. Plaintiffs also sought reformation of the contract on the basis of mutual mistake, contending that section 3(b) of the warrants, which provides for an adjustment of the exercise price and an increase in the number of shares subject to plaintiffs' option after a dilutive transaction, misstates the parties' agreement by limiting the increase of the number of shares to an issuance of stock for no consideration. Specifically, plaintiffs alleged that the word "sentences" should be substituted for the word "sentence" in the third sentence of section 3(b), to reflect the parties' intent for the warrants to permit the increase of plaintiffs' shares, both when common stock was issued for a price lower than the exercise price, and when it was issued for no consideration.
In two prior decisions, this Court affirmed Supreme Court's order denying defendant's motion to dismiss (Empery Asset Master, Ltd v AIT Therapeutics, Inc., 179 AD3d 443 [1st Dept 2020]), and the court's order denying defendant's motion for summary judgment, finding that there were issues of fact as to whether there was a mutual mistake and/or a scrivener's error in section 3(b) of plaintiffs' warrants and whether the February 2018 SPA triggered defendant's obligation to provide plaintiffs with an adjustment to the exercise price pursuant to section 3(d) of plaintiffs' warrants (Empery Asset Master, Ltd. v AIT Therapeutics, Inc., 197 AD3d 1064 [1st Dept 2021]).
Following this Court's decisions, Supreme Court conducted a three-day nonjury trial, finding that contemporaneous documentary evidence and credible witness testimony clearly and convincingly proved [*3]that plaintiffs' warrant agreement contained a drafting error that inadvertently modified the share adjustment provision to which the parties agreed. Specifically, the court found that the warrant agreement must be reformed to reflect the intent and agreement of the parties. The court further found, based upon a preponderance of the evidence, that defendant breached the agreement by failing to properly calculate the price adjustment and share adjustment when plaintiffs exercised their warrants in March 2020, and that plaintiffs were entitled to damages collectively in the amount of $5,814,176.64 plus prejudgment interest running from March 4, 2020. We now affirm.
The gravamen of defendant's argument on appeal is that Supreme Court's decision incorrectly permitted plaintiff to unilaterally rewrite the parties' contracts in their favor, despite having no clear and convincing proof that the parties reached a prior inconsistent agreement or that defendant intended to increase the number of shares issuable upon the exercise of the warrants after a dilutive transaction. Instead, defendant contends that plaintiffs reviewed the language in section 3(b) of the warrants and understood that it provided potential investors with limited share protection in the event defendant issued shares deemed for no consideration.
While there is a presumption that the language contained within a contract embodies the parties' true intent, when a party shows by clear and convincing evidence that the writing memorialized in an agreement is at variance with the intent of the parties, reformation will be granted (see Warberg Opportunistic Trading Fund, L.P. v GeoResources, Inc., 112 AD3d 78, 85-86 [1st Dept 2013]).Here, plaintiffs' trial evidence established their entitlement to an award based on reformation of the warrants, as they showed by clear and convincing evidence that the omission of an antidilution provision providing for share protection as well as price protection was due to a mutual mistake or scrivener's error in the final drafting of the warrants (see Warberg Opportunistic Trading Fund L.P. v GeoResources, Inc., 151 AD3d 465, 470-471 [1st Dept 2017]; 313—315 W. 125th St. L.L.C. v Arch Specialty Ins. Co., 138 AD3d 601, 602 [1st Dept 2016]).
As noted above, section 3(b) of plaintiffs' warrants governs adjustments to share price and share amounts if defendant makes a dilutive offering while plaintiffs warrants are outstanding. As executed, section 3(b) provides that:
"If . . . the Company issues or sells, or is deemed to have issued or sold, any shares of Common Stock . . . , for a consideration per share (the "New Issuance Price") less than a price equal to the Exercise Price in effect immediately prior to such issuance or sale (the "Applicable Price"), . . . the Exercise Price then in effect shall be reduced to the New Issuance Price. If any sale or issuance . . . is for no consideration, then the New Issuance Price shall be deemed to be $0.01 per Ordinary [*4]Share. Upon each such adjustment of the Exercise Price pursuant to the immediately preceding sentence, the number of Warrant Shares issuable upon exercise of this Warrant shall be increased . . ."
However, the evidence, including but not limited to the drafting history and other contemporaneous correspondence, shows that the second sentence in section 3(b) of the warrants was not inserted into the agreement to remove any aspect of the antidilution protection, but rather to clarify what would occur in the event shares were issued for no consideration. Thus, we find that Supreme Court correctly held that the parties intended to include an antidilution provision that provided for the adjustment of both the share price and the number of shares when common stock was issued at a price below plaintiffs' exercise price, and that, as result of mutual mistake, inadvertently left the word "sentence" and did not change it to the plural, "sentences" in section 3(b) (see Warberg, 151 AD3d at 470-471; 313—315 W. 125th St. L.L.C., 138 AD3d at 602).Accordingly, upon exercise of their warrants, plaintiffs were entitled to the value of the adjusted number of shares that were owed but not delivered (565,822 shares).
With respect to adjustment of the exercise price, section 3(d) of the warrants states that the exercise price is to be recalculated when "any [o]ptions are issued in connection with the issuance or sale of other securities." As indicated above, we found in a prior appeal that there were triable issues of fact as to the issue of price adjustment, noting that if we had found as a matter of law that defendant had merely issued warrants in the February 2018 SPA — as opposed to an option and warrant, which would trigger section 3(d) of the warrants — we "would have granted its motion to dismiss instead of affirming the denial of the motion" (Empery, 197 AD3d at 1065). We now find that Supreme Court, which heard the evidence and assessed the credibility of defendant's witnesses concerning the structure of the February 2018 SPA, had sufficient basis for concluding that defendant disguised a section 3(b) option/security sale as a sale of a single warrant. Thus, the February 2018 SPA triggered the exercise price adjustment provision requiring, in accordance with the formula in section 3(d), an adjustment of the exercise price of plaintiffs' warrants from $6.90 to $1.57, not to $4.25, as defendant claims.
Finally, with respect to the valuation of the shares that were not delivered to plaintiffs, we find that Supreme Court correctly valued the shares at $11.23 per share (see Iroquois Master Fund, Ltd. v Quantum Fuel Sys. Tech. Worldwide, Inc., 641 Fed Appx 24, 26 [2d Cir 2016]). Pursuant to New York law, "damages for breach of contract should put the plaintiff in the same economic position [they] would have occupied had the breaching party performed the contract" (Oscar Gruss & Son, Inc. v Hollander, 337 F3d 186, 196 [2d Cir 2003]). Here, it is undisputed that [*5]defendant's stock is publicly traded. Therefore, Supreme Court properly determined the stock's value on the date of breach by calculating the midpoint between the high and low trading price for defendant's common stock on March 4, 2020, the settlement date for plaintiffs' actual exercise of the options (see Iroquois Master Fund, Ltd. v Quantum Fuel Sys. Techs. Worldwide, Inc., 2014 US Dist LEXIS 85442, *3, 2014 WL 2800752, *1 [SD NY, June 17, 2014, No. 13 Civ 3860 (CM) (SN)], affd 641 Fed Appx 24 [2d Cir 2016]; Hermanowski v Acton Corp., 729 F2d 921, 922 [2d Cir 1984]; Maxim Group LLC v Life Partners Holdings, Inc., 690 F Supp 2d 293, 301 [SD NY 2010]).
We have considered defendant's other arguments and find them unavailing.
Accordingly, the judgment of the Supreme Court, New York County (Joel M. Cohen, J.), entered December 1, 2021, after a nonjury trial, in favor of plaintiffs in the amount of $6,725,965.32 plus statutory interest, should be affirmed, with costs.
Judgment, Supreme Court, New York County (Joel M. Cohen, J.), entered December 1, 2021, affirmed, with costs.
Opinion by Pitt-Burke, J. All concur.
Kern, J.P., Oing, Kennedy, Mendez, Pitt-Burke, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 23, 2023